of New Mexico City. Thank you. I'd like to reserve 10 minutes. Good morning, my name is Paul Meltzer and with me today is co-counsel Tim Brosnan. I represent Jeff Meek, also present is his father Myron Meek. As we know, Mr. Meek has been in prison since March of last year. In our briefs we raise the constitutionality of a number of statutes and I'm here to suggest that we don't have to reach the constitutionality of any statute because the search warrants at issue here are fundamentally flawed and that alone requires reversal. If we start with the search warrant for the AOL identification of Captain Jeffrey, which issued on February 23rd of 1999, it is totally devoid of probable cause. The court below called it a close question. I don't think it's close at all. No photograph was ever sent as to the first, the February 23rd, 1999 warrant. It's a pure speech question and never at any time does so-called victim one, who we know is Officer McEwen, tell Mr. Meek how old he is. That alone separates it from all the other published cases in the area. However, what happens is that there is a number of statements that are made that suggest parental supervision. My parents are at home. I'll get with you later. I've got to go. And words to that effect. And I would suggest that there are numerous college students who are much older than the age of 18 who are still subjected to parental supervision. In fact, based on a conversation I had this morning with my daughter, I would suggest that parental supervision never ends. The fact that there is some conversation about the fact that parents are looking, I've got to go, tells us nothing at all about the age of so-called victim number one. And then much is made, of course, of the AOL profile of so-called victim number one. And I'm going to refer to him as victim number one because, as you know, throughout the exercise of record, his initials and name are crossed out. In the AOL profile, he says married and it says possibly, suggesting that he's possibly married. I don't know any 14-year-olds who are married. I know very few people, if any, who are minors who are married. And then the birth date, 1980 question mark, hmm, says he in the profile. What's that last number? On April 8, 1999, when a warrant is sought for Mr. Meek's home, car, and for his arrest, we have some additional information and I'd like to discuss that because each of those pieces of additional information are completely misrepresented in an effort to get the search warrant, which ultimately issues. There is a photograph that is sent by Mr. Meek on April the 3rd of 1999 before the April 8th warrant is sought. And the photograph is described in the police report by Officer McCune at the time he receives it. Quote, adult, late teens, says he in the police report, which was written on, I believe, April the 3rd. Again, adult, late teens. This is not a photograph of a young boy. In the search warrant, which was written by Officer Young Boy. Now, Officer Doty has never seen the photograph, so we can't say, well, he's looked at the photograph and somehow come to his own expert opinion as to what the photograph is. And we know from the statements of expertise that are written by Officer McCune that Officer McCune is an expert in this field. Where is that photograph? I'm sorry? Is the photograph in the record? It is not. Nor did the judge below ever look at it. Um, so all we have is evidence of people who have looked at it. That's correct. Neither side submitted the photograph. Correct. Well, how can you argue anything other than then the person said it looks like a boy, so therefore it's a boy. How? If I might. If you don't submit the photograph, how can we say that what they thought was there was there? Two things. One is that the statement that is made by Officer McCune, who was the person who saw the photograph and the only person who's relevant for the search warrant, said it is a photograph of an adult late teen. And then when it comes time for Officer Doty to report what Officer McCune has said, because Doty also has not seen the photograph, what Doty then says it's a photograph of a young boy. Now, we don't need to get a photograph or look at a photograph to conclude that that's a misstatement, because there is no intervening place for Officer Doty to get additional information about the photograph. He does not correctly report that which is McCune has said. Rather, he misrepresents it, and he does so in an effort to get a search warrant. So the only thing you have are those two statements to show that this was not a photograph of a boy? No, Your Honor. With all due respect, there was a preliminary examination held in Contra Costa County for Judge Grossman, which considered the state law violations, and there was a preliminary examination conducted where Officer McCune testified, and the photograph was shown to Judge Grossman. Two things occurred there. One is that Detective McCune testified at the preliminary examination under oath before the Superior Court that it was a young adult late teen. And secondly, that when Judge Grossman looked at the photograph, he said he couldn't determine that it was a minor. So, Your Honor, the record, with the exception of the misrepresentation which is contained in the search warrant, is all to the same effect, which is that this is a young adult, not a minor. And nothing could be more relevant. That separates whether this is a criminal case or not. You've moved between the AOL search warrant and the second. What do we do with the evidence from the attorney for victim number one, where he says during the interview they asked him, did he know how old you were? And the victim number one replies, yeah. Actually, thank you for pointing that out. That's actually a declaration submitted by Jeff Hansen of the Federal Republic Defender's Committee in the earlier indictment which resulted in dismissal. And there was at that time some difficulty. This was the interview of the victim that he was present at? He watched. And Mr. Hansen submitted the declaration to the effect that the only evidence on the question of age was that victim one was asked by McCune, did Captain Jeffrey know your age? And the victim one said, yeah, and was never asked nor did he say, how did he know your age? Or more importantly, what age did he think you were? And most importantly, when it comes time to write the search warrant, that again, that fact becomes something far different when it's told to the magistrate. The magistrate is told, quote, victim one told me how old he was. That's not what he said. Well, I think it's about the same. I mean, you're quibbling over what that meant. And I think it is a quibble. Your Honor, with all due respect, I think that there's a sort of coyness about the way in which law enforcement proceeds in this area which is much different than the other 24, 22 cases. If you look at cases like Panfell where the sting officer said, listen, I'm a 13-year-old, Root where Jenny identifies herself as being 13, Bailey where all the victims testified that they told the defendant they were minors, Farner where Cindy told the defendant that she was a 14-year-old girl, Powell where it's... I don't think we're going to say there's a standard as to how somebody running a sting has to be, how explicit they have to be. No, but he says I was told the age. So, I mean, you've got to take that as a fact. But that's not what he says, Your Honor. What he says is did he, Meek, know how old you were? Yeah. He doesn't say I told him. That's very different. Well, what's the difference? One is that he may speculate that Meek knew how old he was. Did Meek know how old you were? Yeah. There's nothing there that would suggest that he told him. Well, it's not a definitive statement, I think. We can all agree on that. So the question is with this somewhat, whether ambiguous or not, clear-cut statement, when you combine that with some of these other things like the age 80 or 8 question mark, if you add those all up, is it sufficient to get the warrant? What are we benchmarking that against? I mean, because there's no sort of single thing here. We don't have she's 13 or I'm 14, that sort of thing. We don't have anything like the other cases. But we have kind of like little bits. And my question in trying to evaluate it, because I think it is a close question, is what standard are we looking at? Because we do have to add up all the evidence. Absolutely. And I think we look at both all the evidence and where it takes us. And more importantly, we looked at the Frank's question, which was brief below. We never had an evidentiary hearing. We believe at the evidentiary hearing we would show that there were significant misrepresentations made about the photo, which is crucial to the probable cause analysis. Because if, in fact, Meek did submit a photograph of so-called child pornography, a minor who is displaying his genitals in a way that's designed to appeal to those kinds of interests, that is significantly different than a photograph of someone who is of age. That's the dividing line between what is criminal and what is not. And as to the age, that too is significant. Because if Meek knew that he was communicating with someone who was a minor, that is significant in terms of what is allowed. Let's take a different situation, which is that if someone is exchanging adult pornography over the Internet with someone else, and that includes photographs of people who are 19 or 90, that's legal. And if they are having conversations with one another, describing, as the magistrate said below, what they want to do to each other and how they want to do it, that too is legal. And we know from Reno and cases that follow it that that kind of speech takes place all day every day throughout the United States. It is popular for some reason, but it is popular. And it is also legal. Explicit discussions about sex between adults are absolutely legal. And so in order to carefully define that which is legal and that which is not, we need to have, for the purposes of a search warrant, a showing of criminality, and that is a showing as to the specific thing that is going to be found at the place to be searched, a particularized showing as to that. And that is the point that we raised in our brief and supplemented with a letter, because it takes us into the question of Bridges. Bridges talks about the fact that the general warrant was the basis for the Fourth Amendment. What the general warrant did is allow a search at any time for essentially any reason. And the Fourth Amendment, fortunately, takes us away from that. What the Fourth Amendment requires is a particularized showing. And in Bridges, this Court found in September, following Cowe and other cases, not particularly controversial, that a warrant which is so-called included but not limited to is not in any way limited, but rather is an open door to allow the executing officer to seize anything they want pursuant to the warrant, which is the equivalent of the general warrant. And there is nothing new in Bridges other than perhaps a lesson for law enforcement to go back and read the Fourth Amendment and follow its dictates by particularly describing that which you can seize pursuant to the warrant. In the warrant here, of the 13 categories that are set forth in the warrant at page 81 of the exercise of record, eight of those have the included but not limited to language. It's hard to imagine what cannot be seized pursuant to this warrant. Bridges talks about the point of the whole exercise is to avoid rummaging. You don't want to have a judicial officer delegate to the executing officer the ability to determine what he can seize pursuant to the warrant. That's not the point of the warrant requirement or the Fourth Amendment. That's the general warrant. And so if you turn to the various categories which are allowed under this warrant, it's much broader than Bridges. It says sexually explicit materials. Many of those would be protected by the First Amendment because anything sexually explicit is not criminal. This needs to be limited to those things which are criminal, those things which involve pornography or molestation. You mean it's only admissible evidence that you can get under a search warrant? No. It is not only admissible evidence that you can get under a search warrant. So it can go further than just that statement? It can, Your Honor, but it needs to be limited in some way which guides the officer other than to say sexually explicit material. Well, what would the limitation, what do we require that to say? Sexually explicit materials of young people? Yes. Including but not limited to photographs, magazines, etc.? Yes, although I don't know that I would have the included but not limited to language in light of Bridges. I'm sure that's true. And if they got this, the point is that if they get materials that don't relate to children or to minors, then there's no violation. There's certainly a violation of the privacy interests of the individual whose home is being searched. There's certainly a violation of the Fourth Amendment to the extent that it says that you're supposed to make a particularized showing and describe with particularity that which is going to be seized pursuant to the warrant. Let's just go down to something that seems uncontroversial, but it says any and all documentation in No. 9 disclosing, describing, referring, reflecting, or adverting to pornographic images adult or child. It seems to me, then, that you could seize the President's Commission's report on pornography, the Kinsey report, the book that the famous television show Sex and the City was based on, and any CDs of that show. If you look at No. 3, any name and address ledgers, including but not limited to those that means any contacts that he's ever had in his life, because it's not limited to that. All of his photographic equipment, all of his computer equipment, anything that could record in any way, whether digitally or by voice or by CD or by computer, all computer-generated printouts. That's everything that's ever come out of his computer, recipes. I think we have your point on that. The question is, do you want to reserve some of your time? I do. You've got to wait back to your hoped-for ten minutes. Okay. I'll reserve what remains. Thank you very much. I may please the Court. Good morning. I'm Brian Stretch, an Assistant United States Attorney representing the United States in this matter. Mr. Stretch, you have 20 minutes and you can do whatever you want with it, but I do think that Mr. Meek's counsel has zeroed in on two difficult issues, so I would appreciate it if you would at least address those two. I'll do this first, Your Honor. If I may just, with the Court's permission, address my initial remarks to the first warrant, and the reason is the second warrant relates to a count that was charged, possession of child pornography, that was seized as a result of the second missed, and so the only count of conviction really comes from the first warrant, the AOL warrant, so I'll first address my remarks there. The government needs to establish that probable cause existed in that search warrant of February 23rd for the subscriber information for AOL. To do that, the charge or the offense that would have been committed is the California Penal Code Section 288.2b, and it would be attempted violation of that. In order to set out probable cause for that, the government would need to establish that the person with whom Captain Jeffrey was communicating, Captain Jeffrey believed he was communicating with a minor. We certainly agree with Mr. Meek that there is no reference in the instant message to the age of the victim, and that we're limited just to the language of the instant message back and forth. Looking specifically at that language, at the very outset of the instant message, Officer McEwen states, acting as victim number one, quote, my parents are in just now, kind of watching me. So already at the very beginning, we've already narrowed the universe of individuals who Captain Jeffrey may believe he's communicating with. He's communicating with a person who believes lives with his parents. We certainly don't disagree that there are now adults living at home with their parents. The government's position is what's indicated in this instant message is more than that. What's indicated in this instant message is an indication of supervision and control by the parents. If we look at, again, going further in the instant message, and again, this is at the excerpts of Record 24, but I'm okay just now while on the computer. Again, indicating that parents are in the house, and he's okay for this limited time, but a reasonable inference is that if he were doing something else, his parents might object. So when we look at the types of individuals who may be living with their parents, this is certainly suggesting that this is one who takes on supervision from his parents in all respects at home. Later in that instant message ---- Could that not really be a college student? I think ---- I agree that it could be. I mean, and again, these are difficult issues. But I think at this level where we're dealing with probabilities and whether or not ---- probabilities and whether or not it satisfies, there's a substantial basis that probable cause existed, I think that we can say that there is. Whether the government would bring a case to prove beyond a reasonable doubt that this absolutely shows beyond a reasonable doubt that Captain Jeffrey knew that he was communicating with a minor may be open to question. So if you have two equally likely possibilities, in other words, that you've got a neurotic college student or a non-neurotic but intelligent minor who realizes this is bad news to his parents to find out, does that give them probable cause because they don't know which of those they have in front of them? If one of them gives rise to probable cause, then its government position is yes, that if one of them, it can go in either direction. As the court says, you have two reasonable interpretations. If one of them gives a substantial basis for probable cause, then the government submits that that forms the basis. It's not just the first sentence, but there's additional indications in that instant message where Captain Jeffrey says, show me your pubes and your smooth chest. Again, adults over the age of 18 may have smooth chests, but it's also consistent with a minor who's having a smooth chest. What do you have to show? Probable cause? At this stage, did the master rate have a substantial basis to determine whether probable cause existed, that there was a violation of the statute? If there are two equal premises and one does not predominate over the other, how do both of them become probable? Or either of them become probable? Right. It's a difficult question. And to the extent that if you have equal, that would be hard for the court to determine. It's the government's position here that they're not equal. That when taken in its totality, the entirety of the instant message, it is more probable that we're dealing with a minor as opposed to, say, someone, a young adult. The further indication of that would be when Captain Jeffrey says, will you be able to get away? Pube is referred to what exactly? Well, there's no indication further in here, but I would suggest it's the pubic hair of the person with whom he's communicating with. But there's nothing in the record to clarify. Well, I know. And it's a phrase that I've never heard, so I just don't know. What do you think it means? Well, taking it in context. I think an ordinary magistrate thinks it means. Right. I think given the graphic nature of the instant message and this talk of sexual activity in the instant message, I think a reasonable inference is that it's a reference to the pubic hair and the pubic region of the minor with whom he's speaking. Well, it doesn't refer to a particular state of age, but to a part of the body. I think that's the reasonable inference given the instant message. Well, if you now have these statements which could kind of go either way and the age which could go either way because of the profile, although maybe the fact that you put a question mark in there suggests that you're not willing to actually tell. So I guess I'm looking, is there some factor that you want us to look to that you think tips us beyond this equipoise? Just briefly on that point, and that is the profile isn't actually referenced in the first AOL, in the first warrant. It does come into play with respect to the second warrant. So we don't have that factor for the magistrate to rely upon. We really just have these back and forth IMs. We have the single instant message from which weak intent sets out a probable violation of the penal code. And when we focus again on the additional comment by will you be able to get away, when there's no other reference to the officer McEwing saying he had some plans, goes back to this idea of parental control and parental supervision. Will you be able to get away, the reasonable inference, from your parents? And if you have an adult person living at home, that's not a logical question really to be asked. And so the focus of the government and what we urged this court and was urged this court found that those items taken together is probable or that the magistrate had a substantial basis upon which to rely. Another question I have is it's sort of an odd situation, but you don't really need this gentleman's identity. I mean, in the end you get that his identity is Meeks, and then you can run his name through the warrant, which is kind of irrelevant in a way because what you simply need in the end is does someone who's been communicating as Captain Jeffrey show up when entreated to do so? So I guess I'm wondering what's the legal significance of this first warrant when in a way the identity is superfluous. I think it's part of the overall law enforcement investigative tools. One is they want to try to identify the person with whom they're communicating with. There was at the outset, they didn't have any idea who Captain Jeffrey was. And the way to do this was to find out the subscriber information. There's a reference to a telephone number. Captain Jeffrey gives his telephone number. There's no reference that they got subscriber information with respect to that. So the only way to identify Captain Jeffrey at this stage of the investigation is, of course, subscriber information. The court is correct in suggesting, well, that we could have just gone on with this and invited Captain Jeffrey to a meeting, and at which point, once he identifies himself, he could be arrested. That wasn't how the investigation went down. It wasn't, but to follow up on that question, what difference does it make? In terms of ultimately being able to, if the charge, in this instance, the charge is exclusively based on the instant message. This is enticing a minor over the Internet to engage in illegal sexual conduct. This instant message and the instant message that follows form the basis of that charge. But as yet, they haven't identified the actual defendant. So to actually go ahead and arrest him and charge him, we'd have to find out who he was. But they've identified what his Internet name is. Correct. And so, but to then go ahead and levy charges and bring charges against an actual individual, we'd have to find out who is, in actuality, Captain Jeffrey. And that's what the AOL search warrant sought to achieve. But you find that out when you capture him. In other words, Captain, maybe his name is something else. And on the day he shows up, if it was one of the people in this courtroom that wanted to go ahead and arrest Mr. Meeks, right, you could arrest the person who showed up. You would have probable cause to arrest them. Well, that's exactly right. I guess it is kind of an unformed question, but I'm still having some trouble trying to figure out the legal significance of the first search warrant and wondering whether it matters at all. That's what I'm trying to get to. Do you see what I'm saying? You get his identity, but in a way that's irrelevant to the charge. And to the path the government takes. We need to, we need to, the government needs to establish that it was Mr. Meeks who was actually the person typing those instant messages as Captain Jeffrey. To the extent the investigation went along the line and invited Captain Jeffrey to a meeting at a hotel room, if he doesn't show up, there's still this looming charge of 2422B. But he did, someone showed up. In other words, what I'm asking you is that someone who was communicating at the beginning and continued to communicate under that moniker shows up. So I'm wondering why it matters that you knew his identity, why the defense, you know, they're making an argument that this is an invalid warrant, and I'm wondering what the warrant has to do with the arrest in the end. Correct. To the, and it's a good question, to the extent that Mr. Meeks was arrested based on the information that they gained. So that they already knew who Mr. Meeks was before they actually went and made the arrest. But in the instance that they had, if they had invited Mr. Meeks to a meeting, Captain Jeffrey, and he showed up and subsequently arrested him, then even if the fruits of the search warrant were suppressed, they would still know the identity of Captain Jeffrey. And that's what happened. I mean, I guess, isn't that, if you suppress, I guess that's, maybe that's a different way to put it. If they are correct that search warrant number one is invalid, that would be your case. Well, in this instance, Mr. Meeks was not invited to a meeting, but rather they went and searched his house as a result of the warrant. And so there wasn't an opportunity. There was no, for instance, inevitable discovery of who Mr. Meeks was. They actually took this information and acted upon it proactively with the second warrant to go search the house and then to arrest Mr. Meeks. So in this instance, we wouldn't actually have that eventuality of knowing who he was. Can I ask a question that may or may not have anything to do with how the case comes out? But I'm curious, on the record of whether there was consensual calls, I didn't find any specific evidence the minor consented. There's evidence the parent, father, consented. Is that the status of the record? That is the status of the record. The minor provided his access number and his password to his online account, but did not specifically give permission to the officer to then impersonate him online. Does that get you to a consensual phone call? Yeah. I would frame it a little bit differently, and that is the question is whether or not Captain Jeffrey and Officer McHugh in this case had an expectation of privacy in their instant message chat that somehow was violated. In this instance, we have a police officer as an investigative tool pretending to be somebody else. In this case, it's the minor. And we know that N has then essentially intercepted and recorded that instant message chat. As a law enforcement investigative tool, officers can at any time pretend to be somebody else, and often do. In other kinds of undercover cases. And in this instance, the officer who goes online is in compliance with the exception of recording either otherwise calls or electronic communications. He's a party to the communication itself, and he's doing it for a law enforcement purpose. So I would submit the issue of consent is really a side note for the officer as an investigative tool to go online to pretend to be whoever he wants to be. All right. So you're saying that it's not private because the officer is on the other line, even though the other person doesn't know that. Correct. So you don't think consent is relevant to the issue? Correct. I would submit that Mr. Meek had an expectation of privacy in that call, unless there's an exception. And the exception in this case, for instance, 18 U.S.C. 2511 under the wiretap statutes, allows an officer acting under the color of law who is a party to a conversation to record it. And so I think that that, I would submit that that is the exception that would validate going ahead and being able to record the communication between the two. So on that, and again, and we've argued in our briefs that with respect to the Leon question and whether or not it didn't rise to probable cause, but whether there was at least some evidence of the violation which the officers could reasonably rely. I don't mean to point your argument in any particular way, but I would like your comments on the specificity of the warrant. Gladly. With respect to the second warrant and the specificity, the affidavit by Detective Doty sets forth the expertise in the area. And the first part of the affidavit goes ahead and based on the training and experience of Detective McKeown, he knows what a class of pedophiles do, the types of things that they collect, the means and methods of committing their crimes. And it's set forth at length at the outset of the affidavit in support of the search warrant, and it's at the excerpts of Record 31 at SEC. In there, in the expert affidavit, Detective McKeown states the types of things that he uses. So, for instance, counsel had suggested that sexually explicit materials is not something that would should be properly included in the items to be seized. He said that you have to limit sexually explicit materials to of youth. Correct. And what I would suggest is that based on the instant messages, Captain Jeffrey fits the profile and fits the category of persons known as pedophiles. And pedophiles act in a certain manner based on the expertise set forth in the affidavit. And, for instance, in the affidavit, page 31, and it's the first excerpt, excerpt 31. Thank you. And it's the second paragraph in that that says, these people collect sexually explicit material consisting of photographs, magazines, motion pictures, et cetera, which they use for their own gratification and fantasy. So when you have now Captain Jeffrey fitting a profile or fitting a class of persons, and then the class of persons have certain behaviors and methods of committing crimes, and once he fits that, then it becomes appropriate to seize those materials. So what you're saying is that the affidavit does not limit it to youth, so therefore the warrant does not need to? That's correct. And to the extent that the expert affidavit specifically states the types of materials and the methods and the types of records that a pedophile would keep. So you think from this paragraph it shows that a pedophile would have adult pornography? According to the expert affidavit, yes. That is, the expert affidavit doesn't limit it to pedophiles just keeping child pornography, but it says sexually explicit material in general. And going through, for instance, keeping a diary or names and numbers of other individuals, that is also referenced here in the record in which on excerpts of page 32, which is about halfway down, that the maintenance of diaries relating to sexual encounters by these persons with children is not uncommon. That would be true, but as I look through 13 of this list, it seems about 12 of them would apply to virtually any adult or many adults who simply engage in legitimate First Amendment-protected sexually explicit encounters over the Internet. I think that's right, and I agree with the Court that that is true. But in addition to that, if sexually explicit material is something that a pedophile may use to lessen the inhibitions of a child that he or she may be trying to exploit, that if that is a tool that that class of persons uses to commit the crimes and it's set forth in the affidavit itself, then it's the government's position that the items specifically noted to be seized  We really have to rely on, in this case, in your view, the officer's expertise, that then translates into the broad warrant. I think that's right. Much like a drug dealer on the street who does a hand-to-hand sale and the officer, based on his or her expertise, says, I know that people engaged in drug trafficking keep these things in their home. They keep scales, they keep payo sheets, they keep cutting agents, baking powder, which would otherwise be legal. And the warrant then permits them to go search for those things if it can be shown that the target, in this case the defendant, fits that class of persons. And we submit that it does in this case. Thank you. Thank you. I think we have a couple minutes left for rebuttal here. Okay. You can ask us if there are specific questions. No. Thank you. Thank you. The case then, United States v. Meek, is submitted. Thank counsel for their arguments. And the final case this morning on the docket.
judges: Wallace, Noonan, McKeown